UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| VALARIE MARSHALL, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 08-cv-1170 |
| WINPAK HEAT SEAL CORPORATION, | ) |
| Defendant. | ) |

## O R D E R  &  O P I N I O N

This Title VII race discrimination case is before the Court on Defendant's Motion for Summary Judgment. (Doc. 11). Plaintiff has not responded to Defendant's Motion. As there is no Response to Defendant's Motion for Summary Judgment, Plaintiff is deemed to have admitted the contents of Defendant's Motion for Summary Judgment, pursuant to Local Rule 7.1(D)(2), and the Motion for Summary Judgment will be decided by the Court on the record now before it.[1] For the reasons stated below, the Motion is granted.

### LEGAL STANDARD

Summary judgment should be granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a

---

[1] Plaintiff is proceeding pro se in this case, and therefore both the Court and Defendant explicitly informed her of the consequences of failing to respond to Defendant's Motion for Summary Judgment. (Doc. 11, Ex. 1; Doc. 12). Local Rule 7.1 applies to pro se litigants unless good cause for departing from it is shown; here, Plaintiff has made no attempt to show that the she has good cause for failing to respond, and the Court finds that there is no reason to make an exception, given the more-than-adequate notice by both the Court and Defendant. Local Rule 7.1(D)(6).

matter of law." FED. R. CIV. P. 56(c). Typically, all inferences drawn from the facts must be construed in favor of the non-movant, but the court is not required to draw every conceivable inference from the record. *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). However, where the non-moving party has failed to respond to the Motion for Summary Judgment, "we depart from our usual posture of construing all facts in favor of the non-moving party; rather, we accept as true all material facts contained in" the moving party's statement of undisputed material facts. *Johnson v. Gudmundsson*, 35 F.3d 1104, 1108 (7th Cir. 1994) (*citing Tobey v. Extel/JWP, Inc.*, 985 F.2d 330, 333 (7th Cir. 1993); *Martin v. Consultants and Administrators, Inc.*, 966 F.2d 1078, 1084 (7th Cir. 1992)). "Even if the opposing party completely fails to respond to a summary judgment motion,…the court still must ascertain that judgment is proper 'as a matter of governing law.'" *Id.* at 1112.

## BACKGROUND[2]

Plaintiff Valarie Marshall, an African-American, charges that Defendant terminated her employment because of her race. Defendant Winpak Heat Seal Corporation is a manufacturer of heat-sealable membranes and die-cut lids. Defendant's new employees undergo a 90-day probationary period, during which they may be terminated without cause and are held to a higher standard for compliance with workplace rules than are non-probationary employees. Probationary employees are not members of the Graphic Communication

---

[2]  As Plaintiff is deemed to have admitted the contents of the statement of undisputed material facts in Defendant's Motion for Summary Judgment, the Court's review of these background facts is drawn from Defendant's statement of undisputed material facts, which is supported by affidavits, deposition testimony, and documentary evidence. (Doc. 11 at 3-9).

2

International/International Brotherhood of Teamsters Local No. 568-M ("Union"), which represents many of Defendant's employees pursuant to a Collective Bargaining Agreement ("CBA"); employees become a member of the Union after completing the probationary period. Defendant's CBA with the Union requires progressive discipline and access to the Union's grievance/arbitration procedure for Union members.

Defendant's employees are required to work reasonable scheduled and unscheduled overtime, which the Union and Defendant agreed meant that all employees, including probationary employees, had to accept 66% of the overtime offered to them. Around the time Defendant interviewed and hired Plaintiff, it was more stringently enforcing the overtime requirement, including imposing discipline on employees who did not accept enough overtime. Plaintiff was interviewed for her position at Winpak on November 21, 2007 by Human Resources Manager Joan Maney and Supervisor James O'Brien. At the interview, Ms. Maney informed Plaintiff of the overtime policy and that she would be required to work extensive overtime. Plaintiff responded that this would be no problem for her, and that she was already working 13-14 hour shifts.

Plaintiff began working at Winpak on December 4, 2007, beginning with two or three weeks of training on the first shift, then moving to third shift. On December 28, 2007, Mr. O'Brien conducted a Performance Appraisal of Plaintiff. He gave her a rating of 65, which indicates that improvement is needed. He specifically noted that Plaintiff needed to work more Saturdays, Sundays, and daily overtime. Plaintiff signed the Appraisal, indicating that it had been discussed with her. On

January 30, 2008, Supervisor Marty Crouse completed another Performance Appraisal of Plaintiff, also noting that Plaintiff needed improvement, particularly in the area of working overtime, as she had only accepted nine of the 31 overtime opportunities offered her. Plaintiff also signed this Appraisal. Between January 21, 2008 to February 14, 2008, Plaintiff accepted only 6 of 20 overtime opportunities. Because of her failure to work the required 66% of offered overtime, Plaintiff was terminated by Defendant on February 14, 2008, when she was still in the probationary period. Plaintiff's race played no part in Defendant's decision to terminate Plaintiff. Ms. Maney approved the decision to terminate Plaintiff.

    In her Complaint, Plaintiff alleges that a white co-worker also worked insufficient overtime but was only given warnings, rather than being terminated. This co-worker, John Johnson, had begun working at Winpak on August 13, 2007, and had thus completed his probationary period and become a full Union member by December 2007, when, as noted above, Defendant began enforcing its overtime policy and when Plaintiff began working at Winpak. Mr. Johnson's performance was reviewed on September 24, 2007, and he received a rating of "good," with no specific areas of improvement noted. On February 7, 2008, it was noted in a Performance Appraisal that Mr. Johnson's work was still "good," but that he needed to improve his overtime. On February 14, 2008, Mr. Johnson received a verbal warning for not working enough overtime, and received a written warning two

weeks later.  Mr. Johnson, as a Union employee, was entitled to progressive discipline under the CBA.[3]

## DISCUSSION

Plaintiff's Complaint alleges that Defendant discriminated against her on the basis of her race by terminating her employment, thereby violating Title VII.  Title VII discrimination plaintiffs can precede under either a direct or an indirect method of proof.  To survive summary judgment under the direct method of proof, a plaintiff must show "triable issues as to whether discrimination motivated the adverse employment action," using either direct or circumstantial evidence.  *Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1114 (7th Cir. 2009) (*citing Lewis v. Sch. Dist. # 70*, 523 F.3d 730, 741 (7th Cir. 2008)).  As direct "evidence usually requires an admission from the decisionmaker about his discriminatory animus," most plaintiffs use circumstantial evidence.  *Id*.  When relying on circumstantial evidence under the direct method, plaintiffs must construct a "convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker."  *Phelan v. Cook County*, 463 F.3d 773, 779-80 (7th Cir. 2006) (*quoting Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004)).

Under the indirect method, Plaintiff must establish that "(1) she is a member of a protected class; (2) she was performing her job satisfactorily; (3) she suffered an adverse employment action; and (4) similarly situated employees outside of her

---

[3]  On March 1, 2008, the Union and Defendant agreed to change the CBA in order to address required overtime.  The new CBA provided that employees were required to work 50% of the overtime opportunities offered in a six-month period.  Defendant also agreed to stop overtime-related progressive discipline initiated prior to March 1, 2008, in order to start the new policy.

protected class were treated more favorably." *Goodwin v. Board of Trustees of University of Ill.*, 442 F.3d 611, 617 (7th Cir. 2006) (*citing Traylor v. Brown*, 295 F.3d 783, 788 (7th Cir.2002)). After the plaintiff makes out her prima facie case, the burden shifts to the employer to state a legitimate, non-discriminatory reason for the adverse action, which the employee must then show to be false and merely a pretext for discrimination. *Id.* at 618 (*citing Friedel v. City of Madison*, 832 F.2d 965, 971-72 (7th Cir.1987)).

## I.    Direct Method of Proof

In her Complaint, Plaintiff makes two allegations that could be construed as an attempt at circumstantial evidence. These are that Mr. Johnson also failed to work enough overtime, but was not fired for this infraction, and that of Defendant's 500 employees, only thirteen were African-American, none of whom worked in the office. (Doc. 1 at 6). However, they do not add up to the required "convincing mosaic" that allows an inference of racial discrimination. The Court may consider "evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment" and "evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination" in analyzing a plaintiff's proffered circumstantial evidence. *Darchak v. City of Chicago Bd. of Educ.*, 580 F.3d 622, 631 (7th Cir. 2009) (*citing Sun v. Bd. of Trustees*, 473 F.3d 799, 812 (7th Cir. 2007); *Troupe v. May Dep't Stores, Inc.*, 20 F.3d 734, 736 (7th Cir. 1994)).

The Court notes, first, that at the summary judgment stage, Plaintiff "may not rely merely on allegations…in [her] own pleading," but is required to offer evidence showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e)(2). Plaintiff has offered nothing more than the allegations of her Complaint. Even assuming that she could prove these two allegations, though, they do not raise the inference of discrimination. First, merely having a relatively small number of employees of a given protected characteristic does not contribute to an inference of discrimination, absent some evidence that minority applicants are rejected more frequently than non-minority applicants or that minority workers are terminated more frequently than non-minority workers. *See Ibarra v. Martin*, 143 F.3d 286, 291 (7th Cir. 1998) (*citing McNamara v. City of Chicago*, 138 F.3d 1219 (7th Cir. 1998)) ("The record does not indicate how many Hispanics applied to the Department as a whole, or applied for management positions, and of those how many were qualified for the positions in question. Without this basis of comparison, the numbers he offers tell us nothing about the presence or absence of discriminatory practices,…even assuming discrimination in hiring could be used as evidence of discrimination in suspending or otherwise disciplining employees.").

Further, and as discussed more extensively below, Mr. Johnson was not similarly situated to Plaintiff, as he was a Union member and thus subject to different disciplinary procedures. Plaintiff was fired during her probationary period, during which she was held to a higher standard and was subject to termination without cause; Mr. Johnson's failure to work required overtime occurred when he was a Union member and thus entitled to progressive discipline.

Because Plaintiff has failed to show any evidence pointing to intentional discrimination by Defendant, and because her unsupported allegations, even if proven, would be insufficient to raise the inference of discrimination, Plaintiff's case fails under the direct method of proof.[4]

## II.    Indirect Method of Proof

As noted above, to proceed under the indirect method of proof, Plaintiff must first establish a prima facie case.  Though Plaintiff can show that she is a member of a protected class and that Defendant took an adverse employment action against her, she fails to show that she was meeting Defendant's legitimate expectations and that Defendant treated similarly situated individuals outside the protected class more favorably than her.  *Goodwin*, 442 F.3d at 617.  As discussed above, during the time of Plaintiff's employment at Winpak, Defendant required its employees to accept 66% of the overtime offered to them, and Plaintiff did not do so, despite being warned of the fact that she was not meeting the requirement.  An employer is entitled to set and enforce legitimate work rules, and this requirement was legitimate.  Therefore, Plaintiff has failed to establish the second element of the prima facie case.

Further, Plaintiff has failed to show that a similarly situated employee outside the protected class was treated more favorably.  In determining whether

---

[4]    The Seventh Circuit has also recognized, in race discrimination cases, a presumption of non-discrimination where the same individual made the decision to both hire and fire the plaintiff.  *EEOC v. Our Lady of Resurrection Medical Center*, 77 F.3d 145, 152 (7th Cir. 1996) ("hirer/firer inference has strong presumptive value") (*citing Rand v. CF Indus., Inc.*, 42 F.3d 1139, 1147 (7th Cir. 1994)).  Here, Ms. Maney participated in both decisions, and so an inference of non-discrimination is raised.

another employee is similarly situated in a case where the plaintiff complains of differential discipline, "a plaintiff must show that he is similarly situated with respect to performance, qualifications, and conduct." *Peirick v. Indiana University-Purdue University Indianapolis Athletics*, 510 F.3d 681, 688 (7th Cir. 2007) (*quoting Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000)). "Typically this involves showing that the employees shared the same supervisor, performance standards, and 'engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'" *Id.* at 688 (*quoting Radue*, 219 F.3d at 617-18).

Mr. Johnson, Plaintiff's proffered comparator, was not similarly situated to Plaintiff. First, he was not subject to the same performance standards as was Plaintiff. Defendant has put on uncontroverted evidence that probationary employees were held to a higher standard than non-probationary employees regarding compliance with work rules and expectations, as it was deciding whether to keep them on as employees.

In addition, Mr. Johnson, as a Union member and non-probationary employee, was entitled to the protections of progressive discipline and for-cause termination. Plaintiff, on the other hand, was not entitled to progressive discipline and could be terminated without cause, as she was still on probation and was not yet a Union member. This difference between probationary employees and Union employees is exemplified by the difference in how Defendant treated Plaintiff and Mr. Johnson: Mr. Johnson's failure to work enough overtime was met with progressive discipline, while Plaintiff's was met with termination when she failed to

9

improve after two negative reviews. Defendant aptly cites a number of cases upholding the finding that probationary and non-probationary employees, and union and non-union employees, are not similarly situated. *See, e.g.*, *Steinhauer v. DeGolier*, 359 F.3d 481, 484-85 (7th Cir. 2004) ("Purifoy and Steinhauer were not similarly situated because Steinhauer was still on probation while Purifoy was not") (*citing Spath v. Hayes Wheels Int'l-Indiana, Inc.*, 211 F.3d 392, 397 (7th Cir. 2000); *Bogren v. Minnesota*, 236 F.3d 399, 405 (8th Cir. 2000); *McKenna v. Weinberger*, 729 F.2d 783, 789 (D.C. Cir. 1984)); *Joiner v. Merrillville Community School Corp.*, 05-cv-407, 2008 WL 151327, *20 (N.D. Ind. Jan. 11, 2008) ("Plaintiff was not similarly situated because teachers were subject to a collective bargaining agreement whereas Plaintiff, in his Principal position, was not subject to this type of an agreement.").

As Plaintiff cannot make out her prima facie case, there is no need for the Court to consider Defendant's arguments showing that its reason for terminating Plaintiff was not a pretext for discrimination. The Court notes, however, the Plaintiff has failed to put on any evidence to meet her burden of showing that Defendant's legitimate, nondiscriminatory reason, Plaintiff's failure to meet the overtime requirement, was a pretext for discrimination. Plaintiff has not made out her prima facie case of discrimination, and therefore her claim fails under the indirect method.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 11) is GRANTED.

IT IS SO ORDERED.

CASE TERMINATED.

Entered this 8th day of April, 2010.

                                                                          s/ Joe B. McDade  
                                                                          JOE BILLY McDADE  
                                                       United States Senior District Judge